## CITY COUNCIL OF MONTGOMERY v. HUTCHINSON AND SCOTT.

1. The action of the common council of the city of Montgomery, declaring a house in the city, from its dilapidated condition, endangering the lives of passers by, a nuisance, is *prima facie* evidence of the fact, casting on the party complaining of the act of the city, directing the razure of the house, the burthen of proving it was not a nuisance.

Error to the Circuit Court of Montgomery County. Before the Hon. G. D. Shortridge.

ACTION on the case, for injury done by plaintiff in error, to the house of defendants in error. Plea, not guilty.

J. D. F. WILLIAMS, for plaintiff in error.

1. The legislature may, from time to time, in establishing police regulations, prescribe the manner of exercising individual rights over property. Vanderbilt v. Adams, 7 Cowen, 351. The legislature may therefore authorize any municipal authority to abate nuisances within its jurisdiction. Ib.

2. By its charter, the city council of Montgomery is authorized "to prevent and remove all nuisances, at the expense of the person causing the same, or upon whose property it may be found." Acts of Assembly, 1837-8, sec. 5 of charter.

3. If therefore, in removing nuisances, the city council do not exceed their authority, no right of action accrued to the

plaintiff below, even though they were damaged by the act of the council. Governor, et al. v. Meredith, et al. 2 Durnford & East, 433.

4. If, in such a case, loss ensues to the individual, the law regards it as a loss without an injury, because he shares the advantages of such police regulations. Vanderbilt v. Adams, 7 Cowen, 352.

5. The plaintiff below could not show that the nuisance did not exist. The city council, possessing jurisdiction, was the proper tribunal before whom to litigate the question. Vannermer v. Mayor of Albany, 15 Wend. 264.

BELSER & HARRIS, contra.

1. The charges asked and refused by the court, were abstract. They did not fairly arise on the evidence, and were calculated to mislead the jury. Hence, they were properly refused. Horsefield v. Adams, 10 Ala. R. 9; McBryde v. Thompson, 8 Ala. R. 650; Randolph v. Carlton, 8 Ala. R. 607; Clarke v. Lane, 1 Scammon's R. 229.

2. The city council, according to their charter, had no right to have the whole house pulled down, but only so much of it as was a nuisance. Corporations are responsible in damages, for the negligent, or violent acts of their agents, and for all the consequences, which flow from such acts. Godloe v. City of Cincinnati, 4 Ohio, 513; Merrill v. Man. Co. 10 Conn. 384; Riggs v. Dickerson, et al. 2 Scammon, 437; Johnson v. Castleman, 2 Dana, 379; Hardin v. Kennedy, 2 McCord, 277; Nelson v. Smith, 10 Wendell, 324; Townsend v. Sus. Turn. Co. 6 Johns. 91.

3. The charges given by the court, as contained in the bill of exceptions, and not objected to, covers the entire law of the case, arising on the facts presented in the record, and the jury found against the plaintiff in error, in the court below. Pinkston and wife v. Green and wife, 9 Ala. 19; 7 Ala. 162; Caruthers, et al. v. Mardis, adm'r, 3 Ala. R. 599; Randal v. Redding, 1 Branch (Flo.) 409.

CHILTON, J.—It appears that the plaintiff in error, having by its charter "the power to remove all nuisances at the expense of the person causing such nuisance, or upon whose

property it may be found," &c. determined that the brick building on the west side of Commerce street, in the city of Montgomery, the property of Jonathan Hunt, was in a falling and dilapidated condition, rendering the passage on the western side-walk dangerous, and it was resolved by the council, that as the agent of the owner of the building refused, after being duly notified, "to take cognizance of the pulling down the same," that the mayor of the city proceed forthwith to raze the building. It was further proved, that the house of the said plaintiff and the said Hunt adjoined each other on one of the main streets in the city of Montgomery, and that a part of the front wall of Hunt's house was in a dilapidated condition, and calculated to endanger the lives of those who passed by it, but that no other part of the same was in this condition. That both houses were built of brick, and part of the front wall of Hunt's house had fallen. The proof showed that the agents of the plaintiff in error had pulled down the front wall of Hunt's house, which was connected with the wall of the defendants' in error, by means of a rope attached to the gable end of the same, and that they had taken down the whole house except a portion of the wall immediately attached to the wall of the said defendants. That during the abating of the said supposed nuisance, an agent of the council was seen prizing with a plank between the wall of said Hunt and defendants' wall, who stopped upon the request of defendants. After pulling down Hunt's wall, a large space or aperture was seen in the wall of said defendants, and Hunt's cellar shortly thereafter filling up with water on account of some hard rains which fell, the remainder of Hunt's wall fell with the defendants' into the cellar. There was some conflict of proof as to whether the wall of Hunt was negligently thrown down. The court, under this state of facts, was requested to charge the jury, that if they believed Hunt's house could not have been pulled down without injury to the house of the plaintiffs below, and if no more damage was done to the plaintiffs' house than was unavoidable, the plaintiffs cannot recover. 2. "If the jury believe that without any action of defendants, Hunt's house would have fallen, and plaintiffs' wall with it, from the effects of the rain which fell, then the plaintiffs could not

recover." The court refused these charges, and the attorney for the city council assign this refusal as error in this court, insisting, that as the council had by statute, jurisdiction to abate nuisances, the ordinance requiring Hunt's house to be taken down could not collaterally be questioned.

It will be observed, that the first charge asked, assumes that it was necessary to pull down Hunt's house, and if it had been proper for the inquiry of the jury, whether the whole house was really a nuisance, or whether only a part of it was, and whether, if such part only had been abated, any injury would have resulted to the plaintiffs below, then the charge would have been improper. For, if the ordinance of the city council was not conclusive of the fact, that the whole house was a nuisance, the court should not assume that fact as proved, as the evidence upon it was conflicting. This presents a question of serious import, and one not at all free from difficulty.

In the case of Vannermer v. The Mayor, &c., of Albany, 15 Wend. Rep. 264, where the board of health adjudged certain premises to be a nuisance, and an ordinance was passed by the corporation, directing it to be abated, and the corporation was sued in trespass for the act of its agent in carrying the ordinance into effect, it was held by the court, (Savage, C. J.) that the plaintiff in such action was not at liberty to show, that the nuisance did not in fact exist at the time of the adjudication; and also, that it was not competent for him to show any irregularity or non-compliance with the ordinance on the part of the board of health. The court in the above case proceeded upon the ground, that the plaintiff in the action at law, cannot collaterally impeach the ordinance. Now it seems clear to my mind, that inasmuch as the jurisdiction of the council depends upon the fact, as to whether the house was, or was not a nuisance, it should have been allowed the plaintiffs below to have shown the court had no jurisdiction, by showing the premises complained of were not of the character adjudged by the ordinance. This action of the city council cannot be assimilated to the judgment of a court of competent jurisdiction, which may not be collaterally impeached. To hold that the council could, by its fiat, determine that a certain house was a nuisance, which

was manifestly otherwise, and that the order for its abatement should preclude an inquiry into the fact, would be in my judgment to deny the party whose property is thus wrongfully taken from him, the right of trial by jury, and to deprive him of his property by any other than "due course of law." In the present case, however, the defendants were neither parties nor in any way privy to the order passed by the council, and they had not the power, if they had been never so much aggrieved by the order, of reversing it by *certiorari.* They are not therefore estopped by the record; and the highest effect which it can have as evidence, is to cast upon the plaintiff below the burthen of proving that the council acted without authority of law, in deciding the house of Hunt to be a nuisance, when it was not. In other words, it is a *prima facie* protection to the council, casting the burthen of proof upon the party calling the act in question. See Goodhue v. City of Cincinnati, 4 Ohio R. 513.

We therefore conclude, that it was not error to refuse the first charge asked, inasmuch as it assumed as a fact beyond the inquiry of the jury, that Hunt's whole house was a nuisance.

The second charge asked is abstract; and besides, is predicated upon a contingency, the happening of which is too remote and uncertain to become properly the foundation of a charge.

It appears from the charges which were given, that the whole merits of the case were properly submitted to the jury. Our conclusion is, the judgment should be affirmed.